GREENAWAY, JR.,
concurring.
I join the Court’s opinion in full. We hold that groups may only be deemed Tier III terrorist organizations based on the terrorist activities of their members if the groups authorized those activities. I write separately to clarify and expand on the meaning and scope of that holding and its necessary implications.
Where the BIA has applied this authorization requirement, it has generally also interpreted the statute to impose a limiting definition on the word “subgroup.”[1] This definition has two features. First, the term “subgroup” covers only “significant” subgroups. See, e.g,, Addendum at 8 (BIA opinion, Dec. 16, 2016) (citing H.R. Rep. No. 107-236, at 63 (2001)). Second, the *293 term applies only “where there are reasonable grounds to believe that [the subgroup] is subordinate to, or affiliated with, [the larger group] and [the subgroup] is dependent on, or otherwise relies upon, [the larger group] in whole, or in part to support or maintain its operations.” Id. (quoting 9 Foreign Affairs Manual § 302.6-2(B)(3)(h)).
These limitations on what can constitute a “subgroup” in this context are interdependent with the authorization requirement and required by our interpretation. A Tier III terrorist organization is “a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in” terrorist activity. 8 U.S.C. § 1182(a)(3)(B)(vi)(III). As a matter of statutory structure, we cannot understand what it means for a group to engage in terrorist activity unless we also understand what it means for a subgroup to do so. If the relevant “subgroup” could be defined as “whichever individuals committed terrorist acts,” then every single group (of whatever size, shape, or formality) that happens to have two .members committing terrorist acts could be deemed a terrorist organization, regardless of the relationship between the members and the group. Accordingly, a limitation on what it means for a group to engage in terrorist activity requires a concurrent limitation on the meaning of “subgroup.” Otherwise, the unauthorized activities of a group’s members—which we have held cannot render the group a terrorist organization—could always be re-characterized as the activities of an unorganized subgroup, transforming the group back into a terrorist- organization once more. The authorization requirement would not function. Moreover, our concerns about the unintended potential for this statute to be extended to most, if not all, asylum-seekers, would go unaddressed.
Thus, for the same interpretive reasons that we have found that the statute requires authorization,[2] I would adopt the BIA’s two limiting definitions of the word “subgroup” as well. I would therefore counsel the BIA," as it applies our holding, to follow not only the holding of this opinion but. that holding’s necessary corollaries, as it has .often done in the past. A group should not be declared a Tier III terrorist organization based on the actions of a subgroup unless that subgroup is “significant” and unless that subgroup “is subordinate to, or affiliated with, [the larger group] and [the subgroup] is dependent on, or otherwise relies upon, [the larger group] in whole or in part to support or maintain its operations.” Addendum at 8 (BIA opinion, Dec. 16, 2016) (quoting 9 Foreign Affairs Manual § 302.6-2(B)(3)(h)).

. In these cases, the BIA also tends to adopt an additional limitation from a subsequent Seventh Circuit case, Khan v. Holder, 766 F.3d 689, 699 (7th Cir. 2014). A person is not subject to the terrorist bar if they did not know, and reasonably should not have - known, that the organization they were a part of was a terrorist organization. 8 U.S.C. § 1182(a)(3)(B)(i)(VI). The Seventh Circuit observed that, in light of the authorization requirement, “a person may not know whether he is supporting a terrorist organization until he knows which acts are authorized." Khan, 766 F.3d at 699 (emphasis omitted).

. Indeed, any interpretive path leads to this same result. To the extent that the Seventh Circuit originally derived this authorization requirement from principles of constitutional avoidance, Hussain v. Mukasey, 518 F.3d 534, 538 (7th Cir. 2008) (citing NAACP v. Claiborne Hardware Co., 458 U.S. 886, 930-32, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982)), a failure to limit the meaning of "subgroup” would also raise those same constitutional concerns. The point is that so long as "subgroup” can mean "members,” there can be no effective distinction between the group’s activities and its members’ activities, under any framework.